PHILLIP A. TALBERT
United States Attorney
EMILY G. SAUVAGEAU
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:23-CR-125-KJM |
|---|---|
| Plaintiff, | United States' Sentencing Memorandum |
| v. | DATE: August 26, 2024 |
| SHASTA LEA SCHNITTKER, | TIME: 9:00 a.m. |
| Defendant. | COURT: Hon. Kendall J. Newman |

The United States respectfully requests that the Court sentence defendant Shasta Lea Schnittker, who pleaded guilty to possession of child pornography, to 97 months imprisonment and ten years of supervised release. Such sentence would be sufficient, but not grater than necessary, to fulfill the sentencing goals articulated in 18 U.S.C. § 3553(a)(2).

## I. BACKGROUND

In 2022, law enforcement began investigating the reported sexual abuse of Schnittker's four-year-old neighbor. The victim neighbor disclosed that Schnittker's husband or romantic partner, "Tony" Jimenez, sexually abused him/her on multiple occasions while Jimenez was babysitting the victim at Jimenez and Schnittker's house. The victim described sleepovers where she/he was in bed with Jimenez and got "frog slime" all over him/her. The victim said Schnittker and Jimenez's child got "frog slime" on him/her, too. The victim said that Schnittker was home once when the "frog" slime happened, and that Schnittker said, "oh my god, that's a big mess in the bed" and that it came from Jimenez's "pee-pee

UNITED STATES' SENTENCING MEMORANDUM  1

last night."

Law enforcement searched Schnittker and Jimenez's home and found multiple computers, phones, and electronic storage devices that contained child sexual abuse material ("CSAM")[1] within the shared home. Within the devices, Schnittker and Jimenez possessed CSAM that appeared to be shared between the two. Of note, one video on Jimenez's computer depicted Schnittker recording herself with her face to the camera. During the video, Schnittker held up a flash drive and said, "this is where I come . . . keep all my CP" and "I wanna show you a taste of what I use. Just one moment." Schnittker then moved the camera to focus on a screen which was playing a video of CSAM, as an adult male penis rubbed against a minor child's exposed vagina in the internal video. Schnittker then faced the camera and said, "I think I'll save you the rest for later, but that might give you an idea." The embedded CSAM video was found separately stored on a flash drive in Schnittker's home.

After viewing these videos, law enforcement conducted further forensic review of the devices found in the home and associated accounts. On Schnittker's computer, she possessed 1,142 images and 110 videos of CSAM, as defined in 18 U.S.C. § 2256(8). These images and videos included depictions of the sexual abuse of prepubescent minors and of toddlers and of sadistic and masochistic abuse, some of which are described in the Factual Basis for Plea (ECF No. 31 at 14) and PSR. As an example, one video located within Schnittker's saved files depicted a masked adult female and a white toddler female between one and three years old. Both were on a bed for part of the video and next to a toilet for another part of the video. Through the course of the video, the adult female sexually abused the child victim by oral copulation, by holding the child upside down while the adult urinated on her face, and by pouring a pitcher of water over the child while upside down, making it difficult for the child to breathe.

In addition to the saved images and videos, Schnittker's browser history included the search terms "Lolita porn" and "Lolita fuck." According to the case agent, "Lolita" is a reference to sexual attraction to a young female child. Artifacts from Schnittker's computer and Jimenez's computer showed that Schnittker had previously maintained a DropBox account, and Schnittker described using

---

[1] This memorandum uses the term "CSAM" synonymous with "child pornography" as defined in 18 U.S.C. § 2256(8). While the term "child pornography" still appears in federal statutes, the term CSAM is preferred as it focuses on the content depicted in the materials and resulting trauma to the child victims.

the "dark web" or "Tor" (The Onion Router) in personal journals.

FBI located an apparent Facebook chat between Schnittker and Jimenez that was saved in a Word document on Schnittker's computer in May 2016. The chats and further review of Schnittker and Jimenez's electronic devices revealed that Schnittker and Jimenez had met through the website "Virtuous Pedophiles," where Schnittker used one moniker and Jimenez used another moniker. Throughout the chats, Schnittker described her desire to sexually abuse children to Jimenez and referenced CSAM she had shared with Jimenez via Dropbox. The chats further appeared to indicate that Schnittker was grooming or encouraging Jimenez to engage in sexual abuse of children, as indicated in the below messages from Schnittker to Jimenez:

- "I think about that little girl with us, naked, kissing her and watching you kiss her. Having sex. I've gotten myself so turned on by imagining us naked and me watching you have sex with her, you inside her—drives me crazy. I'll be kissing her during it. I'm too turned on . . . ." PSR ¶ 11.
- "I added a new folder to 'shred,' working on organizing my pics, and I'll add more. See what you think. Why does sharing one's collection seem like one of the most intimate acts two people can have. Maybe I'm just weird. Enjoy." // "there is something else I'll add soon. Having the same AoA is such a turn on." PSR ¶ 11.
- "Well in that case, I decided long ago that I want to make love to you and I'll do whatever to make it happen and I'll bring my laptop with….yes my wholly illegal collection…for us to enjoy together." PSR ¶ 11.
- "I had one those real life daydreams where u were with me and there was the sexiest little girl in my lap wearing a dress. I was so aroused and wanted to touch her slowly in inching my hand towards her sweet spot while kissing her neck, but it was sort of public and to keep from going too far, you had to take me and have your way with me asap to release our built up desire." PSR ¶ 11.
- "I'll tell u what I want to do with a little girl, wishing I could slip my fingers inside her, feeling that warm wetness and licking that sweet nectar from my fingers. I wish I could taste a little girl again…nothing tastes as wonderful as that." PSR ¶ 11.

- "I want a pedo husband to live out fantasies." PSR ¶ 11.

Indeed, Schnittker moved with Jimenez from Colorado to Siskiyou County. They had a child together, and named their child a combination of their Virtuous Pedophile monikers.

Through the Facebook chats, Schnittker also told Jimenez about encountering children in public and her desires to sexually abuse those passing children:

- "I had to work with the public today, usually I don't, and the cutest little girl came with her parents. Probably about 8 years old, long brown hair. She kept smiling at me and me her. I was thinking of you the whole time as well. That made my Friday (smile emoticon) I had some dirty thoughts about her the whole time talking with her parents." PSR ¶ 11.
- "I rarely see kids at my work unless I'm covering for sick coworkers or sent to other agencies who deal with children." // "More than a year ago, I had cover for an entire month at CPS. That was surreal, I have interesting stories from there and always got to see cute kids." PSR ¶ 11.

After moving to Siskiyou County with Jimenez, Schnittker worked at First Five Siskiyou Children & Families Commission, a taxpayer-funded program that serves families with children under five years old.[2]

Schnittker was initially arrested on state charges and was released on bail on October 2022. She remained in contact with Jimenez (who was in state custody) via recorded jail calls. On or about November 1, 2022, Schnittker told Jimenez that she met another guy named "Tyler" on "VP" (Virtuous Pedophiles) and that she was in Stockton with her new boyfriend. Consequently, law enforcement searched Schnittker's house again and seized two phones and a laptop. During the search, one of the phones received an incoming phone call from a contact saved as "Tyler Dennis Vitale."

In May 2023, a grand jury indicted Schnittker for possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). Schnittker pleaded guilty in December 2023 pursuant to a plea agreement. This case is now before the Court for judgment and sentencing.

---

[2] After Schnittker's initial arrest on state charges, First Five Siskiyou allowed FBI to search the computer previously used by Schnittker. FBI found child erotica that Schnittker had accessed on her work computer.

## II. APPLICABLE SENTENCING GUIDELINES

The guidelines are not in dispute. The total offense level is 30 and criminal history category is I, which results in a Guideline range of 97-121 months.

## III. ARGUMENT

In accordance with the plea agreement and after careful consideration of the facts of the case and the history and characteristics of the defendant, the United States respectfully recommends a sentence of 97 months imprisonment, to be followed by ten years of supervised release. Such low-end sentence is sufficient, but not greater than necessary, to accomplish the sentencing goals enumerated in 18 U.S.C. § 3553(a)(2).

The nature and circumstances of the offense justify a 97-month sentence in this case. While the defendant was charged with and pled guilty to possession of child pornography, the offense also involved distribution to Jimenez. In her own words, Schnittker described the way she used the images and videos she possessed for her own sexual gratification. She further shared her CSAM collection with Jimenez for his sexual gratification, at the expense of the victims. Schnittker's conduct warrants a lengthy, though low-end, term of imprisonment.

Not only was Schnittker maintaining a storage of CSAM and sharing it with other self-proclaimed "pedophiles" online for their sexual gratification, but Schnittker also positioned herself in the community so that she would have access to children. In online chats, Schnittker described the gratification she received when she encountered children in the community. When Schnittker and Jimenez moved to Siskiyou County together, Schnittker sought and obtained employment at First Five Siskiyou, where she used her work computer to view images of children that fell below the "child pornography" threshold as defined in 18 U.S.C. § 2256(8) but were described as "child erotica." Those images had nothing to do with her job. They had everything to do with her sexual interest in children.

Schnittker wrote, in conversations with Jimenez and in personal journals, about her desires to sexually abuse young children for her own gratification. At the same time, Schnittker maintained a massive storage of child sexual abuse material, including over one thousand images and one hundred videos of children being sexually abused by adults. Schnittker maintained this troubling inventory of CSAM to satisfy her own desires, but she also distributed it to others. Schnittker recorded a video of

herself recording CSAM and distributed the CSAM to Jimenez, as a sample of what he could obtain through her. Schnittker then married Jimenez and named their child after her "Virtuous Pedophiles" online username. She groomed him to further abuse children. And when Jimenez was in custody for sexual abuse of a minor, Schnittker found another partner via "Virtuous Pedophiles." A guidelines sentence would not only deter Schnittker from future misconduct, but would also deter other individuals like Jimenez, "Tyler" from "VP," and any similarly situated individuals who have a sexual interest in children and are poised to act on those impulses at the expense of very real, child victims.

Schnittker's longstanding, voracious, and self-described desire to sexually abuse children, coupled with her technological sophistication, demand a sentence within the applicable guideline range for her offense. Because Schnittker's self-proclaimed "pedophilia" dates back at least eight years, a guidelines sentence is necessary to deter Schnittker from committing future crimes against children and to deter other similarly situated "pedophiles" and other offenders from abusing children, whether in person or via the internet's network of shared files. The aggravating factors in this CSAM possession case coupled with Schnittker's history and characteristics warrant sentence at the low end of the applicable guideline range for her offense.

The United States concurs with the probation officer's recommendation regarding supervised release and asks this Court to impose a ten-year term of supervised release. The United States further requests that the Court order mandatory restitution in the amount of $45,000.

### IV. CONCLUSION

For the foregoing reasons, the United States asks this Court to impose a 97-month sentence, to be followed with ten years of supervised release.

Dated: August 20, 2024

PHILLIP A. TALBERT
United States Attorney

By: /s/ EMILY G. SAUVAGEAU
EMILY G. SAUVAGEAU
Assistant United States Attorney